**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **JOE T. SMITH,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIVIL ACTION NO. 2:05-cv-1065-F** |
| **AMERICAN INTERNATIONAL GROUP, INC.; et al.,** | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

**COME NOW** American General Financial Services of Alabama, Inc. ("American General") (improperly designated as American General Finance Inc. in the complaint), as successor to American General Finance, Inc., American General Finance Corporation, Merit Life Insurance Company, Kimberly Singleton, Pat Porter, and Roy T. Evans (hereinafter collectively referred to as the "Defendants"), by and through their undersigned counsel, appearing specially so as to preserve any and all defenses available under Rule 12 of the Federal Rules of Civil Procedure and specifically preserving the right to seek arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.*, and hereby submit this Opposition to Plaintiff's Motion to Remand. In support thereof, Defendants show unto the Court the following:

## I. INTRODUCTION

Plaintiff commenced the present action on September 28, 2005 by filing a complaint in the Circuit Court of Bullock County, Alabama. In his Complaint, Plaintiff advances a variety of vague allegations specifically designed to defeat Defendants' valid fraudulent joinder argument. (See Plaintiff's Complaint, ¶¶13-22). Specifically, Plaintiff asserts that Kimberly Singleton, Pat

Porter, and Roy T. Evans (the "Non-Diverse Defendants") misrepresented that credit insurance was a "good deal" and that purchasing such insurance would improve both his chances of being approved for the loans in question and his credit score/rating. (Plaintiff's Complaint, ¶¶13, 15). Moreover, Plaintiff alleges that the Non-Diverse Defendants misrepresented to him that refinancing and consolidating prior debt would save him money. (Plaintiff's Complaint, ¶14). Based on these allegations, Plaintiff appears to assert the following individual causes of action with respect to loans he obtained on June 28, 2001, August 14, 2001, and November 23, 2001: (1) fraudulent misrepresentation and/or suppression; (2) negligent misrepresentation; (3) negligent and/or wanton hiring, training, and supervision; and (4) breach of fiduciary duties.

On or about November 3, 2005, Defendants removed the present action to this Court on federal question and diversity jurisdiction grounds under 28 U.S.C. § 1331, 1332, and 1441. In their Notice of Removal, Defendants specifically demonstrated that the Non-Diverse Defendants have been fraudulently joined and, accordingly, that diversity jurisdiction exists under 28 U.S.C. § 1332(a). Defendants also demonstrated that the present action necessarily involves substantial and disputed federal issues, and that, accordingly, this Court has embedded federal question jurisdiction under 28 U.S.C. § 1331. On or about December 5, 2005, Plaintiff filed his Motion to Remand wherein he argued that the Non-Diverse Defendants were properly joined and that Defendants failed to show that the amount in controversy requirement had been satisfied.[1] Plaintiff also argued that his complaint only alleges state law causes of action and does not

[1] On December 29, 2005, Defendants filed a Motion for an Extension of Time to Respond to Plaintiff's Motion to Remand for the Purpose of Conducting Remand-Related Discovery that remains pending before this Court. Though Defendants believe that they have established that Plaintiff's Motion to Remand should be denied, they maintain their position that remand-related discovery is necessary to clarify Plaintiff's vague and evasive claims and to conclusively demonstrate that this Court should exercise federal question and diversity jurisdiction over this matter.

require resolution of substantial federal issues. As demonstrated in detail below, however, Plaintiff's contentions are unfounded, and his Motion to Remand is due to be denied.

## II. ARGUMENT

### A. This Court Has Diversity Jurisdiction Over the Present Action Because the Non-Diverse Defendants Have Been Fraudulently Joined and the Amount in Controversy Exceeds the Jurisdictional Threshold.

Federal district courts have jurisdiction over civil actions where there is complete diversity among the parties, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Though diversity jurisdiction generally mandates that "every plaintiff . . . be diverse from every defendant," Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1355 (11th Cir. 1996), federal courts in Alabama have specifically held that "[w]hen a defendant has been fraudulently joined, the court should disregard his or her citizenship for purposes of determining whether a case is removable based upon diversity jurisdiction." Bullock v. United Benefit Ins. Co., 165 F. Supp. 2d 1255, 1256 (M.D. Ala. 2001)(citing Tapscott, 77 F.3d at 1360.).

It is clear that the Non-Diverse Defendants have been fraudulently joined in the present action because Plaintiff's claims against said Defendants are both time-barred by the applicable statute of limitations and substantively meritless. Thus, the Non-Diverse Defendants' citizenship should be disregarded, creating complete diversity between the Plaintiff and all properly joined Defendants. In addition, Defendants have provided more than enough evidence to support their contention that the amount in controversy exceeds $75,000 in the present action. As such, both diversity jurisdiction requirements have been satisfied herein, and Plaintiff's Motion to Remand is due to be denied.

### 1. Complete Diversity Exists in the Present Action Because the Non-Diverse Defendants Have Been Fraudulently Joined.

Complete diversity exists in the present action because the citizenship of the Non-Diverse Defendants should be disregarded due to their fraudulent joinder. See Bullock, 165 F. Supp. 2d at 1256 (citing Tapscott, 77 F.3d at 1360). Fraudulent joinder occurs where "there is no possibility that the Plaintiff can prove a cause of action against the resident (non-diverse) defendant." Fowler v. Provident Life and Accident Insurance Co., 256 F. Supp. 2d 1243, 1246 (N.D. Ala. 2003)(citing Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998)). Recent Alabama precedent establishes that there is no possible cause of action against a non-diverse defendant when the plaintiff's claims against said defendant are substantively meritless and/or time-barred by the applicable statute of limitations. See Owens v. Life Ins. Co. of Georgia, 289 F. Supp. 2d 1319, 1325 (M.D. Ala. 2003); Fowler, 256 F.Supp.2d 1243; Bullock, 165 F. Supp. 2d 1255; Wakeland v. Brown & Williamson Tobacco Corp., 996 F. Supp. 1213 (S.D. Ala. 1998).

In Owens, the plaintiff brought an action in 2003 against an insurance company and a non-diverse individual defendant based upon alleged misrepresentations and/or omissions made by the individual defendant, as agent for the insurance company, with respect to a life insurance policy purchased in 1984. Owens, 289 F.Supp.2d at 1321. In conjunction with these allegations, the plaintiff asserted claims for breach of contract, fraud, and fraudulent suppression against both defendants. Id. The defendants subsequently removed the case, arguing that complete diversity existed by virtue of the individual defendant's fraudulent joinder. Id. at 1321-23. Judge Fuller found that the plaintiff was provided with documentation in 1984 that both contradicted the alleged oral misrepresentations and provided the information allegedly suppressed. Id. at 1326. Accordingly, the Court concluded that the plaintiff "should have discovered the possibility of

fraud and misrepresentation in 1984 when he purchased the Policy, and the two year statute of limitations commenced running at that time." Id. Plaintiff's claims against the individual defendant were, therefore, found to be barred by the two year statute of limitations. Id. Because the statute of limitations precluded any possibility of establishing a cause of action against the individual defendant, the Court held that said defendant was, in fact, fraudulently joined and denied the plaintiff's motion to remand. Id.

In Bullock, Judge DeMent reached the same conclusion in a virtually identical case. Bullock, 165 F. Supp. 2d 1255. There, the plaintiff filed an action in 2001 against a health insurer and a non-diverse individual defendant based upon alleged misrepresentations and/or omissions made by the individual defendant, as agent for the health insurer, with respect to an insurance policy purchased in 1998. Id. at 1256. In conjunction with these allegations, the plaintiff asserted various fraud claims and a breach of contract claim against both defendants. Id. The defendants subsequently removed the case, arguing that diversity jurisdiction existed by virtue of the individual defendant's fraudulent joinder. Id. Judge DeMent concluded that the plaintiff's breach of contract claim against the individual defendant failed as a matter of law because said defendant was not a party to the contract at issue. Id. Additionally, the Court also noted that the plaintiff was provided with documentation in 1998 that both contradicted the individual defendant's alleged oral misrepresentations and provided the information allegedly suppressed. Id. at 1258. Accordingly, the Court concluded that the statute of limitations for the plaintiff's fraud claims "began running in 1998 and expired no later than 2000," well before the action at issue was commenced. Id. Plaintiff's fraud claims against the individual defendants were, therefore, found to be barred by the two year statute of limitations. Id. Because the statute of limitations precluded any possibility of establishing fraud claims against the individual

defendant, the Court held that said defendant was fraudulently joined and denied the plaintiff's motion to remand. Id.

Finally, Judge Blackburn adopted the same line of reasoning in Fowler. 256 F.Supp.2d 1243. There, the plaintiff filed an action in 2002 against an insurer and a non-diverse individual defendant based upon alleged misrepresentations and/or omissions made by the individual defendant, as agent for the insurer, with respect to a disability insurance policy purchased in 1992. Id. at 1245. In conjunction with these allegations, the plaintiff asserted fraudulent and/or negligent misrepresentations and fraudulent suppression. Id. The defendants subsequently removed the case, arguing that diversity jurisdiction existed by virtue of the individual defendant's fraudulent joinder. Id. at 1246. Judge Blackburn found that the plaintiff was provided with documentation in 1992 that both contradicted the alleged oral misrepresentations and provided the information allegedly suppressed, Id. at 1248-49, and concluded that "the plaintiff should have discovered the possibility of fraud and misrepresentation in 1992 when she purchased the policy, and the two year statute of limitations commenced running at that time." Id. at 1249. Id. Plaintiff's fraud claims against the individual defendants were, therefore, found to be barred by the two year statute of limitations. Id. Because the statute of limitations precluded any possibility of establishing fraud claims against the individual defendant, the Court held that said defendant was fraudulently joined and denied the plaintiff's motion to remand. Id. at 1249-50.

As demonstrated in detail below, Plaintiff's claims against the Non-Diverse Defendants in the present action are both time-barred by the applicable statute of limitations and substantively meritless. As such, the Non-Diverse Defendants have been fraudulently joined in the present action, and Plaintiff's Motion to Remand should be denied.

      **a. Plaintiff's Fraud-Based Claims Against the Non-Diverse Defendants are Time-Barred by the Applicable Two Year Statute of Limitations.**

Plaintiff's fraud-based claims against the Non-Diverse Defendants are governed by a two year statute of limitations.[2] This two year statute of limitations period begins to run for fraud claims "when the plaintiff discovers the fraud or when the plaintiff should have discovered the fraud in the exercise of reasonable care." Fabre v. State Farm Mut. Auto. Ins. Co., 624 So. 2d 167, 168 (Ala. 1993). Accord Lott v. Tarver, 741 So. 2d at 397; K & C Dev. Corp. v. AmSouth Bank, N.A., 597 So. 2d 671, 676 (Ala. 1992). Plaintiff incorrectly suggest in his Motion to Remand that fraud is discoverable only in those instances where the plaintiff receives information directly contradicting the alleged fraud. In actuality, however, fraud "is deemed to have been discovered when it ought to have been discovered; that is, **at the time of the discovery of facts that, on the part of a person of ordinary prudence, would provoke inquiry that if followed up, would lead to the discovery of the fraud.**" Fabre v. State Farm Mut. Auto. Ins. Co., 624 So. 2d at 168 (emphasis added). Thus, Alabama's two-year limitations begins to run on "the date the plaintiff has actual or constructive notice of the fraud." Lott v. Tarver, 741 So. 2d at 397 (citing Ala. Code § 6-2-3 (1975)).

Plaintiff's allegations in the present action can be summed up as follows: (1) that the Non-Diverse Defendants misrepresented that refinancing prior loans would save him money; (2) that the Non-Diverse Defendants misrepresented that purchasing credit insurance was a good deal; (3) that the Non-Diverse Defendants misrepresented that purchasing credit insurance would

---

[2] Because no specific limitations period is prescribed for Plaintiff's fraud claims, they are all governed by the general, two (2) year statute of limitations period outlined in ALA. CODE § 6-2-38(l). See, e.g., Ex parte American General Finance, Inc., 795 So. 2d 685, 686-87 (Ala. 2000); Lott v. Tarver, 741 So. 2d 394, 397 (Ala. 1999); Liberty Nat'l Life Ins. Co. v. Parker, 703 So. 2d 307, 308 (Ala. 1997).

improve his chances of getting approved for the loans in question; and (4) that the Non-Diverse Defendants misrepresented that purchasing credit insurance would improve his credit score/rating. (See Plaintiff's Complaint, ¶¶13, 15). As demonstrated in Defendants' Notice of Removal, however, Plaintiff signed loan documents in connection with each of his 2001 loans containing facts that, "on the part of a person of ordinary prudence, would [have] provoke[d] inquiry that if followed up, would [have] lead to the discovery of the fraud." Fabre v. State Farm Mut. Auto. Ins. Co., 624 So. 2d at 168. (See the Affidavit of Robert S. Ritter authenticating Plaintiff's loan documents, attached hereto as Exhibit "A;" and Plaintiff's loan documents, attached to the Affidavit of Robert S. Ritter as Exhibit "A(1).").

Specifically, Plaintiff's 2001 loan documents disclose all of the relevant financial terms for his loans, including the amount financed, finance charge, total of payments, interest rate, amount of monthly payment, and total number of payments. (See Exh. A(1)). Plaintiff could have, and should have, easily used this information to determine whether refinancing prior loans was in his financial best interests. Similarly, Plaintiff's loan documents disclose the premiums for all insurance products purchased. (See id.). Plaintiff could have, and should have, easily used this information to determine whether purchasing Defendants' insurance products was, in fact, a "good deal", a determination incumbent upon him to make.

Regarding the optional nature of credit life and/or credit disability insurance, Plaintiff's Note and Security Agreement specifically state: "**You understand that credit insurance is not required in connection with this loan and was not a factor in the approval of the extension of credit**, and that you may obtain such insurance, if you want it, from any person you choose." (Id.) (emphasis added). Moreover, Plaintiff's Federal Disclosure Statement provides: "Credit life and/or credit disability insurance are not required to obtain a loan and will not be provided unless

you sign and agree to pay the additional cost." (Id.). Finally, Plaintiff's August 14, 2001 and November 23, 2001 loans contained an Insurance Disclosure Summary, which states: "**I FULLY UNDERSTAND THAT I DO NOT HAVE TO PURCHASE ANY OF THE FOLLOWING INSURANCE TO GET MY LOAN.**" (Id.)(emphasis in original).

Given the above, it is clear that Plaintiff's loan documents directly contradict the Non-Diverse Defendants' misrepresentations regarding whether refinancing prior loans would save him money; whether purchasing credit insurance was a good deal; and whether purchasing such insurance would improve his chances of getting approved for the loans in question. (See id.). Such notice of these alleged misrepresentations alone should have aroused Plaintiff's suspicion and triggered a duty of inquiry regarding the Non-Diverse Defendants' alleged misrepresentation that purchasing credit insurance would improve Plaintiff's credit score/rating. Had Plaintiff made such an inquiry, he would have undoubtedly discovered that purchasing credit insurance does not improve consumers' credit score/rating. Thus, Plaintiff had sufficient notice of all fraud claims against the Non-Diverse Defendants at the time of his respective loan closings in 2001.

Because Plaintiff had notice of his fraud claims against the Non-Diverse Defendants in 2001, those claims accrued, and the two year statute of limitations began to run, in 2001. Fabre v. State Farm Mut. Auto. Ins. Co., 624 So.2d 167, 168 (Ala. 1993). Accord Lott v. Tarver, 741 So.2d at 397; K & C Dev. Corp. v. AmSouth Bank, N.A., 597 So.2d 671, 676 (Ala. 1992). Plaintiff, however, did not file the present action until September 28, 2005, more than three years after any of the 2001 loans at issue. As a result, his fraud claims against the Non-Diverse Defendant are time-barred by the applicable two year statute of limitations.

**b. Plaintiff's Fraud-Based Claims Against the Non-Diverse Defendants Fail as a Matter of Law.**

Plaintiff's fraud-based claims against the Non-Diverse Defendants also fail as a matter of law. The Alabama Supreme Court has held that recovery under a fraud theory necessitates a showing that the plaintiff "reasonably relied" on the alleged misrepresentations. See Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala. 1997). Again, Plaintiff incorrectly suggests in his Motion to Remand that reliance on a fraud is only unreasonable in those instances where the plaintiff has access to information that directly contradicts the alleged fraud. In truth, however, "[i]f the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts," then the plaintiff's reliance on the alleged misrepresentations was not reasonable, and "the plaintiffs should not recover." Massey Automotive, Inc. v. Norris, 895 So.2d 215, 220 (Ala. 2004) (quoting Torres v. State Farm Fire & Casualty Co., 438 So.2d 757, 759 (Ala. 1983)).

As demonstrated above, Plaintiff signed loan documents in connection with each of his 2001 loans that either directly contradicted the Non-Diverse Defendant's alleged misrepresentations or disclosed information from which, with the exercise of ordinary care, he would have discovered the true facts. As such, Plaintiff could not have reasonably relied on the Non-Diverse Defendants' alleged misrepresentations, and his fraud-based claims against said Defendants necessarily fail as a matter of law.

**c. The Fifth Circuit's Decision in *Smallwood* is Not Applicable in the Present Action.**

In his Motion to Remand, Plaintiff claims that Defendants' basis for fraudulent joinder is "really an attack on the merits of the entire case" and, as such, fails under the Fifth Circuit's *en banc* decision in Smallwood v. Illinois Cent. R.R. Co., 385 F.3d 568 (5th Cir. 2004). In Smallwood, the Fifth Circuit adopted a "common defense" exception – that is, an exception

whereby a finding of fraudulent joinder may not be based on a defense that is common to all defendants and necessarily dispositive of all claims against all defendants.  Id. at 574-75. Accordingly, where defendants seek to prove fraudulent joinder by demonstrating the plaintiff's inability to recover against the in-state defendants:

> [a] showing that the plaintiff's case is barred as to all defendants is not sufficient. When the **only** proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, **and that showing is equally dispositive of all defendants** rather than to the in-state defendants alone, the requisite showing has not been made.

Id. at 575 (emphasis added).

Significantly, the Eleventh Circuit has not applied Smallwood's common defense exception in its fraudulent joinder analysis, and, as previously demonstrated, requires only that there be no possibility of recovery against the resident defendant for a finding of fraudulent joinder.  See Tillman v. R.J. Reynolds Tobacco, 253 F.3d 1302, 1305 (11th Cir. 2005) (citing Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998); Coker v. Amoco Oil, Co., 709 F.2d 1433, 1440 (11th Cir. 1983)).  As such, the Smallwood exception does not apply to the present action and should not be considered during the fraudulent joinder analysis herein.

Even if applicable, Smallwood's common defense exception affects only a very small class of cases. As the Fifth Circuit explained in Smallwood:

> [O]ur holding today is narrow. It applies only in that limited range of cases where the allegation of improper joinder rests **only** on a showing that there is no reasonable basis for predicting that state law would allow recovery against the in-state defendant **and that showing is equally dispositive of all defendants**.

Id. at 576 (emphasis added).[3] The narrow scope of Smallwood was underscored by the Fifth Circuit's subsequent decision in Rainwater v. Lamar Life Ins. Co., 391 F.3d 636 (5th Cir. 2004). In a per curiam opinion, the Rainwater panel remanded the case before it to the district court for further analysis of whether the statute of limitations defense that barred claims against the in-state defendant was likewise "dispositive of **all** claims against **all** defendants." Id. at 638. (emphasis in original). According to the Rainwater court, the case before it "turn[ed] ... on whether the limitations defense that disposes of all claims against in-state defendants in fact disposes of **all** claims against **all** defendants, as the principle of Smallwood is triggered only when all defendants are reached." Id. (emphasis added).

Smallwood's common defense exception was further limited by the Fifth Circuit's recent decision in Boone v. CitiGroup, Inc., 416 F.3d 382 (5th Cir. 2005), a consumer finance suit with allegations virtually identical to those in the present action. In Boone, consumer borrowers brought suit against a non-resident lender and its corporate affiliates, as well as individual residents of Mississippi for a variety of fraud claims. Id. at 385-86. The defendants removed the action to federal court on the ground that the non-diverse individual defendants had been fraudulently joined. Id. at 388. "In particular, CitiGroup argued that, in light of remand-related discovery, there was no reason to believe that any of [plaintiffs'] claims against the non-diverse [defendants] were timely under Mississippi's three-year statute of limitations." Id. at 388-89.

[3] In Smallwood, the district court found improper joinder on the ground that the claims against the in-state defendant were preempted by federal law. See id. at 572. Having reached that conclusion, the court then applied "law of the case" and granted summary judgment for the out-of-state defendant on the ground that all the remaining claims were preempted as well. Id. Thus, in Smallwood, the only basis for improper joinder was a legal defense—preemption—that as a matter of law also precluded all the claims against the other defendants. In the majority's view, because the resolution of the claims against the in-state defendant "**necessarily compel[led]** the same result for the nonresident defendant," then the defendant had shown merely "a lawsuit lacking in merit," rather than improper joinder. Id. at 574 (emphasis added).

"The district court agreed and denied remand primarily on the ground of limitations." Id. at 389. The plaintiffs appealed the district court's decision and argued that under Smallwood, there was no fraudulent joinder because the statute of limitations, if it precluded their claims against the non-diverse defendants, necessarily precluded their claims against all defendants. Id.

In denying the plaintiffs' appeal, the Fifth Circuit reiterated the narrow reach of Smallwood, as well as its inapplicability to remand motions in consumer finance cases such as the present action:

> [T]he crux of Smallwood II's holding is that "only" where the showing that there is no reasonable basis for predicting state law would allow the plaintiff to recover against the resident defendant is such that the **same** showing "equally" and "necessarily" "compels" the conclusion that recovery is precluded against "all" non-resident defendants, then there is no improper joinder, but simply a wholly meritless suit. That is not the situation here.
>
> Although it is true that the district court denied remand and granted summary judgment on the basis of the same residual statute of limitations, it is not true that the statute of limitations defense assertion by the resident defendants "equally" and "necessarily" "compel[led]" dismissal of **all** claims against all the diverse defendants.
>
> * * *
>
> Appellants underscored at oral argument that their claims against the diverse corporate defendants were not simply premised on vicarious liability for the tortious acts of the three non-diverse individual appellees working for First Family. However, in properly conceding that at least some of their claims against the non-resident defendants are analytically distinct from and in addition to their respondeat superior claims against those defendants based on the wrongs allegedly committed by the resident defendants, appellants have conceded that the failure of their claims against the resident defendants does not in and of itself cause those of which are not based on respondeat superior liability for the wrongs committed by the resident defendants to fail as well.

Id. at 390-92 (emphasis in original).

After Boone, it is clear that a defense precluding recovery against individual resident defendants does not "equally" and "necessarily" preclude recovery against corporate non-resident defendants where at least some of the claims against the corporate non-resident defendants are analytically distinct from and in addition to the claims against the individual resident defendants. Id. With that said, at least one of Plaintiff's claims against the non-resident corporate Defendants in the present action -- the claim for negligent and/or wanton hiring, training, and supervising -- is analytically distinct from and in addition to the claims against the individual resident defendants as such claims can *only* be asserted against the corporate non-resident Defendants. See Bridges v. Principal Life Ins. Co., 141 F.Supp.2d 1337, 1340 n. 3 (M.D. Ala. 2001)(noting that claims of negligent supervision must necessarily be brought against the insurer and not against the insurer's agent). Thus, even after a finding of fraudulent joinder in the present action, **at least** one claim would necessarily remain for separate disposition against the corporate non-resident Defendants. This case therefore falls outside the exception in Smallwood, where the finding of improper joinder was followed immediately by the automatic disposition of all remaining claims based on the same legal ruling.[4]

Additionally, the applicable statute of limitations in the present action applies to each defendant severally, rather than jointly. See Weinstein v. Sea View, Inc., 188 F.2d 116, 119 n.6

[4] E.g., Queen v. American General Finance, Inc., 351 F.Supp.2d 576, 578-80 (S.D. Miss. 2005)("After an improper joinder analysis is conducted, the contractual claims against the out of state defendants survive. Those claims are asserted solely against the out of state defendants inasmuch as only the out of state defendants are in privity of contract with the plaintiffs. ...The requirement of a separate analysis of the contractual claims places this case outside the scope of Smallwood. Accordingly, the Court finds that the Rainwater opinion provides the most persuasive analysis. As a result, the plaintiffs' renewed motion for reconsideration is not well-taken"); accord Wingate v. Kerr-McGee Rocky Mountain Corp., no. 1:04cv513, 2005 WL 161221 at *4 (E.D. Tex. Jan. 26, 2005)(quoting Rainwater, 391 F.3d at 638 (emphasis in original))("Smallwood, however, applies only when *"all* claims against *all* defendants" are barred by a common defense").

(5th Cir. 1951). Accordingly, a court's resolution of claims against one defendant based on the statute of limitations does not necessarily compel the same result with regard to claims against another defendant as required by Smallwood. Rather, a separate inquiry must be undertaken with regard to each defendant. For this additional reason, Smallwood's narrow common defense exception does not apply to the present action.

**d. Plaintiff's Counsel Has Manipulated the Complaints in this and other Similar Matters In a Transparent Attempt to Defeat Defendants' Valid Fraudulent Joinder Argument.**

It bears noting that Plaintiff's counsel has manipulated the complaints in this and other similar matters in a transparent attempt to defeat Defendants' valid fraudulent joinder argument. As demonstrated in Defendants' Notice of Removal, Plaintiff's counsel has filed numerous boilerplate lawsuits against Defendants in Mississippi, Tennessee, and Alabama.[5] Though these lawsuits all involve loans from the same general time period, the Mississippi cases were filed a couple of years prior to the Alabama and Tennessee matters. In the Mississippi cases, Plaintiff's counsel filed complaints alleging that the plaintiffs were told they had to purchase credit insurance in order to obtain their loans.[6] Several federal courts in Mississippi have since denied motions to remand and are now granting motions for summary judgment in those cases because the plaintiffs' loan documents directly contradict this alleged misrepresentation.[7]

---

[5] The complete list of the lawsuits filed by Plaintiff's counsel against Defendants in Mississippi, Tennessee, and Alabama is too voluminous to include in this Memorandum. As a result, Defendants have set forth the list in a separate document, attached hereto as Exhibit "B."

[6] As an example of the complaints filed in Mississippi, submitted herewith as Exhibit "C" is a true and correct copy of the complaint filed in the lawsuit styled Edward Morgan, et al. v. American International Group, Inc., In the Chancery Court of Jones County, Mississippi, Second Judicial District, Laurel Division, Civil Action Number: 2002-1029.

[7] The consumer finance lawsuits in Mississippi in which federal courts have denied remand, and in some of which the courts have already granted summary judgment for the defendants, include: Boone v. Citigroup, Inc., __ F.3d __, 2005 WL 1581091 (5th Cir. July 7,

As a result, Plaintiff's counsel has altered the complaints it has filed in Alabama and Tennessee to allege that the plaintiffs were told that purchasing credit insurance would improve their credit score and their chances of being approved for the loans in question.[8] Thus, even though the loans were from the same time period, Plaintiffs' counsel has abandoned its previous allegations and conjured up new allegations in an effort to avoid summary judgment. In fact, Plaintiff's counsel has even gone so far as to amend the few Mississippi lawsuits in which

---

2005); Ross v. Citifinancial, Inc., 344 F.3d 458 (5th Cir. 2003), *r'hng en banc denied*, Jan. 25, 2005 (nos. 02-60608 & 02-60609); Clark v. Commercial Credit Corp., ___ F. Supp. 2d ___, 2005 WL 428476 at *3 (S.D. Miss. Feb. 7, 2005); Lee Frye, et al. v. American General Finance, Inc., et al.; In the United States District Court; Southern District of Mississippi; Western Division; No. 5:02cv122BrS (S.D. Miss. Feb. 9, 2004); Queen v. American General Finance, Inc., 289 F. Supp. 2d 782 (S.D. Miss. 2003); Lott v. First Family Financial Servs., Inc., No. 2:02cv56PG (S.D. Miss July 11, 2003); Green v. American General Finance, Inc., 2003 WL 1191183 (S.D. Miss. March 7, 2003); Stacher v. American General Finance, Inc., 2003 WL 1191182 (S.D. Miss. March 7, 2003); Barnes v. First Franklin Finance Corp., No. 3:02cv1259LN (S.D. Miss. Mar. 31, 2003); Brown v. Citigroup, No. 2:02cv112PG (S.D. Miss. Mar. 21, 2003); Anderson v. First Family Financial Servs., Inc., No. 4:02cv55PB (N.D. Miss. Mar. 6, 2003); Bolden v. Kentucky Finance Co., No. 4:02cv98LN (S.D. Miss. Feb. 28, 2003); Walker v. City Finance Co., 2003 WL 554613 (N.D. Miss. Feb. 12, 2003); Benson v. City Finance Co., No. 1:02cv242DD, slip op. at 6 (N.D. Miss. Feb. 12, 2003); Conner v. First Family Financial Services, Inc., 2002 WL 31056778 (N.D. Miss. Aug. 28, 2002); Ross v. First Family Financial Services, Inc., 2002 WL 31059582, (N.D. Miss. Aug. 29, 2002); Strong v. First Family Fin. Services, Inc., 202 F. Supp. 2d 536 (S.D. Miss. 2002); Henley v. Pioneer Credit Co., 2002 WL 1013110 (N.D. Miss. Apr. 10, 2002); Harrison v. Commercial Credit Corp., 2002 WL 548281 (S.D. Miss. Mar. 29, 2002); Ellis v. Washington Mutual Finance Group, No. 4:01cv144-L-N (S.D. Miss. May 8, 2002); Cooley v. Washington Mutual Finance Group, 2002 WL 1768897 (S.D. Miss. July 29, 2002); Howard v. CitiFinancial, Inc., 195 F. Supp. 2d 811 (S.D. Miss. 2002); Ross v. CitiFinancial, Inc., 2002 WL 461567 (S.D. Miss. Mar. 18, 2002); Johnson v. CitiFinancial, Inc.; 5:01cv215BN (S.D. Miss. Mar. 8, 2002); Crockett v. CitiFinancial, Inc., 4:01cv172-MD (N.D. Miss. Feb. 28, 2002); and Carter v. Union Sec. Life Ins. Co., 148 F. Supp. 2d 734 (S.D. Miss. 2001).

[8] As an example of the complaints filed in Tennessee, submitted herewith as Exhibit "D" is a true and correct copy of the complaint filed in the lawsuit styled Beauty Robertson v. American International Group Inc. aka AIG Insurance, et al., In the Circuit Court of Shelby County, Tennessee; CT-4105-05).

summary judgment has not yet been entered, eliminating the original allegation and replacing it with the newly crafted allegation.[9]

Set forth below is a comparison of the original allegation and the new allegation in the Mississippi matters, which illustrate the attempt by plaintiffs' counsel to alter their pleadings in the hopes of salvaging these meritless lawsuits:

| Original Allegation | New Allegation |
|---|---|
| Contrary to law, Defendants required credit life insurance, credit disability, personal property insurance and/or other insurance in connection with their loans to Plaintiffs. These insurance products were represented by Defendants as a necessary part of the loan package, with all or some of these insurance products misrepresented by Defendants as a necessary prerequisite for the extension of the credit and receipt of the loan. (Ex. C, ¶ 10). | Contrary to law, Defendants fraudulently represented to Plaintiffs that if they purchased the credit life, credit disability and/or personal property insurance then they stood a better chance of getting approved for the loan requested. (Ex. E, ¶ 18). |

[9] The Mississippi lawsuits that Plaintiff's counsel has amended in an attempt to avoid a finding of fraudulent joinder include: Brad Gatlin, et al. v. American International Group, Inc., et al., In the Chancery Court of Jones County, Mississippi, Laurel Division, Civil Action Number: CV-2002-1026; Edward Morgan, et al. v. American International Group, Inc., et al., In the Chancery Court of Jones County, Mississippi, Laurel Division, Civil Action Number: CV-2002-1029; Dorothy Corbin, et al. v. American General Financial Services, Inc., et al, In the Circuit Court of Washington County, Mississippi, Civil Action Number: CI2004-216; Stonewall v. American General Finance, Inc., et al., In the Circuit Court of Carroll County, Mississippi, Second Judicial District, Civil Action Number: 2004-0011CV2L; Freddie Graham, et al. v. American International Group, Inc., et al., In the Circuit Court of Bolivar County, Mississippi, First Judicial District, Civil Action Number: 2002-333; Alice Brown, et al. v. American International Group, Inc., et al., In the Circuit Court of Leflore County, Mississippi, Civil Action Number: 2002-0173-CICI; Doris Beaman, et al. v. American International Group, Inc., et al., In the Circuit Court of Sunflower County, Mississippi, Civil Action Number: 2002-0638-CI; Beatrice Jackson, et al. v. American International Group, Inc., et al., In the Circuit Court of Sunflower County, Mississippi; Civil Action Number: 2002-0640-CI.

As an example of the amended complaints filed in Mississippi, submitted herewith as Exhibit "E" is a true and correct copy of the amended complaint filed in the lawsuit styled Edward Morgan, et al. v. American International Group, Inc., In the Chancery Court of Jones County, Mississippi, Second Judicial District, Laurel Division, Civil Action Number: 2002-1029.

These new allegations were concocted solely for the purpose of avoiding a finding that plaintiffs' loan documents provided notice of their fraud claims at the time of the loan in question, which would trigger the statute of limitations at that time and render unreasonable the plaintiffs' alleged reliance on the alleged misrepresentations. Thus, it is evident that Plaintiff's counsel has manipulated its pleadings, without any basis for doing so, to suit its needs -- a practice that will only be encouraged by remanding the present action.

**2. Defendants Have Provided Sufficient Evidence to Support Their Contention that the Amount in Controversy Requirement is Satisfied in the Present Action.**

The amount in controversy in the present action exceeds $75,000 notwithstanding Plaintiff's refusal to specify damages. In his Complaint, Plaintiff alleges that he has suffered monetary damages, that he "has suffered mental anguish and emotional distress," and that he "has otherwise been injured and damaged." (Plaintiff's Complaint, ¶ 26). Based on these alleged injuries, Plaintiff seeks a "judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable and may award, plus costs." (Id.)

Because Plaintiff seeks an unspecified amount of damages, Defendants are only required to show that "the amount in controversy more likely than not exceeds the jurisdictional requirement." Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996). Defendants clearly satisfied this requirement in their Notice of Removal by citing an abundance of Alabama decisions involving similar claims wherein the Plaintiff was awarded damages in excess of $75,000.[10] Federal courts in Alabama adjudicating similar claims have repeatedly

[10] See e.g. Jeter v. Orkin Exterminating Co., supra, ($2,000,000 punitive damages awarded in fraud and breach of contract matter); Johns v. A.T. Stephens Enterprises, Inc., 815 So. 2d 511 (Ala. 2001) ($150,000 punitive damage award in conspiracy to convert matter); Travelers Indemnity Co. of Illinois & Crawford & Co. v. Griner, 809 So. 2d 808 (Ala. 2001)

($200,000 punitive damage award in fraud and outrage matter); New Plan Realty Trust v. Morgan, 792 So. 2d 351 (Ala. 2000) ($100,000 punitive damage award in conversion and trespass matter); Sparks v. Cash America International, Inc., 789 So. 2d 231 (Ala. 2000) ($225,000 award of punitive damages in fraud and breach of contract matter); Cooper & Co. v. Lester, 832 So. 2d 628 (Ala. 2000) (punitive damage awards ranging from $178,538 to $250,000 in fraud action); Prudential Ballard Realty Co., Inc. v. Weatherly, supra, (award of $750,000 of punitive damages in fraud action); Oliver v. Town, 770 So. 2d 1059 (Ala. 2000) ($249,000 award of punitive damages in conversion action); Chrysler Corp. v. Schiffer, 736 So. 2d 538 (Ala. 1999) ($150,000 award of punitive damages in fraud and breach of contract matter); Life Insurance Company of Georgia v. Parker; supra, ($150,000 award of punitive damages in insurance fraud matter); *Patel v. Patel*, 708 So. 2d 159 (Ala. 1998) ($225,000 award of punitive damages in fraud and breach of contract matter); Talent Tree Personnel Srvs., Inc. v. Fleenor, 708 So. 2d 917 (Ala. 1997) ($1,500,000 award of punitive damages in fraud and breach of contract matter); American Pioneer Life v. Williamson, 704 So. 2d 1361 (Ala. 1997) ($750,000 award of punitive damages in fraud and breach of contract case); Union Sec. Life Ins. Co. v. Crocker, 709 So. 2d 1118 (Ala. 1997) ($1,000,000 award of punitive damages in insurance fraud matter); Life Ins. Co. of Georgia v. Johnson, supra, ($3,000,000 award of punitive damages in insurance fraud action); Hillcrest Center, Inc. v. Rone, 711 So. 2d 901 (Ala. 1997) ($94,000 award of punitive damages in fraudulent inducement action); First Commercial Bank v. Spivey, 694 So. 2d 1316 (Ala. 1997) ($500,000 award of punitive damages in fraud and breach of contract matter); Gallant v. Prudential Ins. Co. of America, CV-93-50, 1994 WL 180709 (LRP JURY) (awarding $33,000,000 in punitive damages); Ford Motor Co. v. Sperau, 708 So. 2d 111 (Ala. 1997) ($1,792,000 in punitive damages); Johnson v. Mercury Finance Co., CV-93-52, in the Circuit Court of Barbour County, Alabama, Clayton Division (plaintiff, buyer of used cars, alleged that defendant fraudulently failed to disclose a $1,000 discount for which defendant purchased the non-recourse note; jury awarded $90,000 in compensatory damages, and $50,000,000 in punitive damages, the award of punitive damages was remitted to $2,000,000.); Key v. Prudential Insurance Co., et al., CV-93-479, in the Circuit Court of Marshall County, Alabama (August 28, 1995) (the plaintiff alleged that the insurance agent misrepresented that no additional premium payments would be required; jury awarded $25,000,000 in punitive damages.); Parham v. Foremost Insurance Co., 693 So. 2d 409 (Ala. 1997) (jury awarded $6,000 in compensatory damages, and $7,500,000 in punitive damages; the punitive damages were later remitted to $175,000.). Consequently, the amount in controversy requirement has been established.

See e.g. New Plan Realty Trust v. Morgan, 792 So. 2d 351 (Ala. 2001) (awarding $100,000 in compensatory damages, the majority of which for mental anguish, in conversion action); Prudential Ballard Realty Co., Inc. v. Weatherly, 792 So. 2d 1045 (Ala. 2000) ($250,000 compensatory damage award, mostly attributable to mental anguish, in fraud matter); Jeter v. Orkin Exterminating Company, Inc., 832 So. 2d 25 (Ala. 2001) ($300,000 mental anguish awarded in fraud and breach of contract matter); Oliver v. Towns, 770 So. 2d 1059 (Ala. 2000) ($67,800 metal anguish award); New Plan Realty Trust v. Morgan, 792 So. 2d 351 (Ala. 2000) (in a conversion claim, more than half of the $100,000 award of compensatory damages was attributed to mental anguish); Sparks v. Cash America International, Inc., 789 So. 2d 231 (Ala. 2000) (in fraud and breach of contract claim, $50,000 of the $75,000.00 compensatory damage award was attributed to mental anguish); Liberty National Life Ins. Co. v. Caddell, 701 So. 2d

acknowledged that the citation of analogous cases suffices to show that the amount in controversy more likely than not exceeds the jurisdictional requirement. See Owens, 289 F. Supp. 2d 1319 (after careful review of the cases cited by the defendant, the Court concluded that said defendant had sufficiently demonstrated that the amount in controversy requirement had been met.); Fowler, 256 F.Supp.2d at 1249 (same); Bullock, 165 F. Supp. 2d at 1259 (same).

Relying on cases such as Bennett v. American Medical Security, Civil Action No. 02-D-120-N (M.D. Ala. Feb. 8, 2002) and Fabritis v. United Wisconsin Life Insurance Co., Civil Action No. 02-T-820-N (M.D. Nov. 1, 2002), Plaintiff contends that Defendants failed to establish that the amount in controversy requirement has been met. However, the only evidence that the Bennett defendants used to show that the damages in the case were likely to exceed the $75,000 requirement was a blanket assertion in a footnote that she had satisfied her heavy burden. Bennett, No. 02-D-120-N, at *2. Similarly, the only evidence that the Fabritis defendants used to show that the damages in the case were likely to exceed the $75,000 requirement was the unsupported assertion in their removal notice that Jury awards in cases on the same type of suits routinely exceed $75,000. Fabritis, Civil Action No. 02-T-820-N, at *4.

---

1132 (Ala. 1997) (awarding $50,000 in compensatory damages for mental anguish resulting from alleged conversion); Hare v. Mutual Savings Life, CV-94-529, 1997 WL 743899 (LPR JURY) (awarding $500,000 in compensatory damages for alleged insurance fraud where primary injury was emotional distress); Mallard v. Countrywide Funding Corp., CV-95-199, 1997 WL 743898 (LRP JURY) (awarding $1,000,000 in compensatory damages to two Plaintiffs for emotional distress caused by fraud); Ball v. ALFA Realty, Inc., CV-95-103, 1997 WL 850611 (LRP JURY) (awarding $100,000 in compensatory damages for emotional distress suffered as a result of fraud); Norwood v. Glen Lanes Realty Co., CV-96-391, 1997 WL 996325 (LRP JURY) (awarding $200,000 in compensatory damages for emotional distress resulting from fraud); Gallant v. Prudential Ins. Co. of America, CV-93-50, 1994 WL 180709 (LRP JURY) (awarding $430,000 in compensatory damages for alleged insurance fraud); Sperau v. Ford Motor Co., CV-91-34, 1994 WL 180700 (LRP JURY) (awarding $4,492,000 in compensatory damages to four Plaintiffs for emotional distress allegedly caused by fraud). Consequently, the amount in controversy requirement is easily satisfied in the case at hand.

By contrast, Defendants here have provided the Court with ample support for the proposition that the amount in controversy requirement has been met. See Owens, 289 F. Supp. 2d 1319; Fowler, 256 F.Supp.2d at 1249; Bullock, 165 F. Supp. 2d at 1259. As such, this Court should find that the amount in controversy requirement is satisfied in the present action.

**B. This Court Has Embedded Federal Question Jurisdiction Over the Present Action Under the Supreme Court's Recent Decision in *Grable.***

With its recent decision in Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, --- U.S. ----, 125 S.Ct. 2363 (2005), the United States Supreme Court reaffirmed the validity of embedded federal question jurisdiction under 28 U.S.C. § 1331 and expanded its reach beyond previously established boundaries. Thus, the pre-Grable decisions cited by Plaintiff in his Motion to Remand are largely inconsequential and may only be considered, if at all, in the context of the Court' new, more expansive interpretation of embedded federal question jurisdiction.

Grable established a three-prong test for determining the existence of federal question jurisdiction in those instances where state-law claims implicate significant federal issues. First, the federal issue must "actually be in dispute." Id. at 2369 n.3. Second, the federal issue must be "a substantial one." Id. at 2367. Third, the federal jurisdiction must be "consistent with congressional judgment about the sound division of labor between state and federal courts." Id. As demonstrated in detail below, each of these prongs is satisfied herein, and this court has embedded federal question jurisdiction over the present action.

**1. The Present Action Involves Disputed Federal Issues.**

In his Complaint, Plaintiff alleges that Defendants misrepresented and/or suppressed certain information regarding the financial benefits and optional nature of purchasing credit insurance and refinancing prior debt. (See Plaintiff's Complaint, ¶¶13-22). Though he does not

explicitly plead federal causes of action *denominated as such*, Plaintiff's allegations and the lending practices invoked thereby are extensively regulated by federal law, including: the federal Truth in Lending Act, 15 U.S.C. § 1601, *et. seq.*; Regulation Z, promulgated thereunder; 12 CFR § 226.1, *et. seq.*; and 12 CFR § 590.101, promulgated thereunder. Accordingly, Plaintiff's right to recover under his putative state law claims turns, in many instances, on whether Defendants complied with this federal regulatory scheme.

For instance, Plaintiff has asserted negligence-based claims in the present action. These claims require Plaintiff to prove (1) a duty or standard of care; (2) breach of that duty or standard; (3) proximate cause; and (4) damages. Plaintiff cannot, however, prove a duty of care or breach of that duty unless he establishes a violation of TILA and Regulation Z with respect to his disclosure-related claims. Thus, the validity of, at the very least, Plaintiff's negligence claims likely turns on Defendants' compliance with federal law.

The issue of Defendants' compliance with TILA and Regulation Z is sure to be disputed throughout the present action. Defendants contend that the loan documents provided Plaintiff and the disclosures contained therein satisfy all of the requirements set forth in TILA and Regulation Z. Specifically, the loan documents make the following disclosures in accordance with Regulation Z: the annual percentage rate (See 12 C.F.R. § 226.18(e)); the amount financed as well as the finance charge (See 12 C.F.R. § 226.18(b)-(d)); and the total of payment, the amount of monthly payments, and the total number of payments. (See 12 C.F.R. § 226.18(g)-(h)). Furthermore, the loan documents at issue comply with TILA, which states that in those instances where the cost of credit related insurance is not included in the finance charge -- which it was not in the loans at issue -- then the lender must disclose that "insurance coverage is not

required by the creditor...[,]" 12 C.F.R. § 226.4(d)(1)(i), which Defendants did disclose in the loans at issue.

Given the above, the first prong of Grable's embedded federal question analysis is clearly satisfied in the present action.

**2. The Disputed Federal Issues in Question are Substantial.**

The Grable Court held that federal issues are substantial where there is "a serious federal interest in claiming the advantages thought to be inherent in a federal forum." Id. at 2367. One such advantage offered by a federal forum is the "hope of uniformity." Id. In those fields that are heavily regulated by federal law, such as the consumer lending industry, uniformity in the application of a detailed regulatory scheme is, in and of itself, a substantial federal interest that warrants the imposition of federal jurisdiction. In fact, the Fourth Circuit has specifically held that "[w]here the resolution of a federal issue in a state-law cause of action could, because of different approaches and inconsistency, undermine the stability and efficiency of a federal statutory regime, the need for uniformity becomes a substantial federal interest, justifying the exercise of jurisdiction by federal courts." Ormet Corp. v. Ohio Power Co., 98 F.3d 799, 807 (4th Cir. 1996) (citations omitted).[11]

A state court's resolution of the federal issues in the present action could facilitate conflicting interpretations of TILA and Regulation Z and, in turn, undermine the stability of this statutory regime. Therefore, there is a serious federal interest herein in claiming the advantage of uniformity inherent in a federal forum. As such, the disputed federal issues herein are

[11] In resolving the circuit split regarding whether Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804 (1986), always requires a federal cause of action as a condition for exercising federal question jurisdiction, the Grable Court sided with, and thus implicitly endorsed, Ormet. See Grable, 125 S.Ct. at 2366 n.2.

substantial, and the second prong of Grable's embedded federal question analysis is satisfied in the present action.

**3. Exercising Federal Jurisdiction in the Present Action Will Not Conflict With the Sound Division of Labor Between State and Federal Courts.**

Lastly, Grable states that, in determining whether embedded federal question jurisdiction exists, a Court must consider whether its exercise of federal jurisdiction will conflict with the sound division of labor between state and federal court. Id. at 2367. Grable highlights three factors that may be relevant to this "sound division of labor" standard. The first consideration is whether there is a private right of action under the federal statute at issue. See id. at 2369-70. Here, TILA undoubtedly provides a private right of action. See 15 U.S.C. § 1640(a), (e) ("[A]ny creditor who fails to comply with with any requirement imposed under this part ... with respect to any perosn is liable to such person...." and the cause of action "may be brought in any United States district court..."). The second consideration concerns the preemptive effect of the federal statute at issue. See id. at 1270. This factor also weighs in favor of federal jurisdiction as TILA preempts all state regulations to the extent that they conflict with its provisions. See 15 U.S.C. § 1610. The third and final consideration is whether exercising federal jurisdiction would "materially affect, or threaten to affect, the normal currents of litigation." Id. at 1271. Federal courts already routinely hear numerous TILA-related cases. As such, exercising federal jurisdiction in this and other similar cases should not overwhelm the federal judiciary. This is especially true in light of the fact that, as demonstrated above, Mississippi Courts have routinely denied motions to remand in virtually identical cases and are now in the process of either granting summary judgment for the defendants, or dismissing with prejudice the plaintiffs' claims for failure to prosecute these meritless claims.

Given the above, the third and final prong of the Grable standard is clearly satisfied in the present action. As such, this Court should exercise its embedded federal question jurisdiction and deny Plaintiff's Motion to Remand.

## III. CONCLUSION

Based upon the foregoing, this Court has diversity and embedded federal question jurisdiction over the present action, and Plaintiff's Motion to Remand is due to be denied.

Respectfully submitted,

/s/ Matthew T. Mitchell
Robert H. Rutherford (RUT002)
David A. Elliott (ELL027)
Matthew T. Mitchell (MIT050)

Attorneys for Defendants

**OF COUNSEL:**

**BURR & FORMAN LLP**
3100 SouthTrust Tower
420 North 20th Street
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

**CERTIFICATE OF SERVICE**

I hereby certify that on January 27, 2006, I electronically filed the foregoing Opposition to Plaintiff's Motion to Remand with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: Jere L. Beasley, Thomas J. Methvin, C. Lance Gould, Thomas Julian Butler, Matthew T. Mitchell, Robert H. Rutherford, Jeffrey M. Grantham, and John Thomas Aquina Malatesta.

/s/ Matthew T. Mitchell
OF COUNSEL